UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,  CASE NO: 8: 12-CR-418-T-JDW-MAP
    Plaintiff,
v.

RONALD WILSON BROWN,
    Defendant.
_____/

### SENTENCING MEMORADUM ON BEHALF OF RONALD WILSON BROWN

COMES NOW, the Defendant, RONALD WILSON BROWN, by and through the undersigned counsel, pursuant to the Federal Rules of Criminal Procedure and Federal Statues, and files this Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553 (a) and states as follows:

### Sentencing under *Booker*

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that:

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Id. at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. 3553(b)(1) or which rely upon the Guidelines mandatory nature, 18 U.S.C. 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, mak[ing] the Guidelines effectively advisory. Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as being revised by Booker,

> requires a sentencing court to consider Guidelines ranges, see U.S.C.A. 3553(a)(4)(Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns, as well. See 3553(a).

Booker, 125 S. Ct. at 757. This under Booker, sentencing Courts must treat the Guidelines as just one number of sentencing factors set forth in 18 U.S.C. 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 3553(a) further directs sentencing courts to consider the following factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3553(a)(1));

2) the kinds of sentences available; (3553(a)(3));

3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (3553(a)(6)); and

4) the need to provide restitution to any victims of the offense.( 3553(a)(7)).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation. (emphasis added).    Under 18 U.S.C. 3661, *no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as not ordinarily relevant to sentencing a variety of factors such as the defendants age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the

Federal Sentencing Guidelines, May 2004); United States v. Naylor, __ F. Supp. 2d __, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendants youth when he committed his predicate offenses he was 17 and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the 3353(a) factors, many of which the guidelines either reject or ignore. United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives heavyweight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in Booker. United States v. Jaber, __ F. Supp. 2d __, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.). See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence), rehrg en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Bookers remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise if it thought the Guidelines not only had to be considered (as the

> amputated statute requires) but had generally to be followed its opinion would surely say so.

Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given heavy weight, its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

## Application of the Statutory Sentencing Factors
## to the Facts of this Case

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

   (a) **The Nature and Characteristics of the Offense**

   Mr. Brown was a receiver of child pornography. This, therefore, is a possession case. Mr. Brown possessed just over 200 images of child pornography (he had more than 150 but under 300). A large number of these items were maintained on floppy disks (A technology from the 1970's made obsolete by 2010). There are significant conversations in regards to fantasy behavior concerning bondage, torture, and death of young children. There is no proof Mr. Brown has ever participated in any acts (outside of the possession of the pornography) of violence upon any children. Mr. Brown will have to register as a sex offender, could be subject to a lifetime of probation, and could be ordered as conditions of supervised release to not possession computers and/or having other conditions to relevant to a child pornography possession case. *See United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008) (remanding child pornography case for resentencing where a downward variance to probation was based on district court's findings that the defendant (1) was a first-time offender without a history suggesting that he had or would abuse children; (2) was addicted to adult pornography and had sought treatment for that addiction; (3) was not a pedophile and presented a low risk for recidivism according to a psychologist who evaluated him; and (4) complied with the terms and conditions of his pretrial supervision; nature and circumstances of the offense took the district court's sentence out of the realm of reasonableness); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (affirming a downward variance from 151 to 188 months in prison to 84 months in prison in a child pornography case in which the district court found the defendant's history of abuse and abandonment to be one of the worst ever seen by the court); *United States v. White*, 506 F.3d 635 (8th Cir. 2007) (affirming a downward variance in a distribution of child

pornography case in which: there was only one instance of distribution; the 39 year old defendant was an older man with a deteriorating medical condition; he had no criminal history; and a medical expert testified that the defendant posed a low risk of recidivism); *United States v. Davis*, 537 F.3d 611 (6th Cir. 2008) (sentencing court "may account for a defendant's age at sentencing," but remanding for resentencing in this case because the defendant's age (70) compared to the age at which he committed the crime (56) did not warrant downward variance to a sentence of one day of imprisonment); *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (affirming downward variance from a guideline range of 41-51 months to five years probation in possession of child pornography case based in part on finding that the defendant did not fit the profile of a pedophile, had no history of substance abuse, no interpersonal instability, was motivated and intelligent, and had the continuing support of his family).

### (b) History and Characteristics of Mr. Brown

Ronald is 57 years old. He was adopted and does not know anything about his biological parents. He has no criminal history and has remained incarcerated during the litigation in this cause. Ronald has two years of college education. Ronald maintained full time employment for the last 30 (thirty) years. Mr. Brown is willing to seek and perform any treatment required by the court.

2.  **The Need for the Sentence Imposed To Promote Certain Statutory Objectives:**

### (A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

The need for punishment is measured by the degree of "blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or other diminished capacity." Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn. L. Rev. 571, 590 (February 2005). The Guidelines include none of the factors bearing on Ronald Brown's degree of culpability.

### 1. Mr. Brown's conduct was aberrant

Ron lived a law abiding lifestyle until the instant offense, which occurred when Ron was 57 years of age. His offense is completely uncharacteristic when viewed in the context of his entire productive, adult life. He has maintained gainful employment throughout his adult life, and has no prior convictions as evidenced by the PSR's assessment of zero criminal history points. This reflects the lowest level of recidivism.

The recent policy statement at 5K2.20 sets forth the parameters of conduct and criminal history which the Sentencing Commission believes appropriately may warrant a downward departure based on "aberrant behavior". It states:

> A sentence below the applicable guideline range may be warranted in an Extraordinary case if the defendant's criminal conduct constituted aberrant Behavior. However, the court may not depart below the guideline range on this basis if 1) The offense involved serious bodily injury or death; 2) the defendant discharged a firearm or otherwise used a firearm or dangerous weapon; 3) the instant offense of conviction is a serious drug trafficking

offense; 4) the defendant has more than one criminal history point...; or 5) the defendant has a prior federal, or state conviction.

This court should and can grant a variance based on the aberrant nature of his conduct. *See, e.g., United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008)(variance based on "isolated mistake" in otherwise long and entirely upstanding life); *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005)(defendant was a "law abiding citizen, who [did] an incredibly dumb thing"); *United States v. Davis*, 2008 WL 2399290 (S.D.N.Y. June 5, 2008)(Defendant was a first offender who had worked throughout his 15-year marriage to educate his six children and whose offense was prompted by economic pressures). Ron is the perfect candidate for an aberrant behavior departure. It should be recognized the Commission has placed restrictions on the type of offenses eligible for this departure. Because the accused did not possess a dangerous weapon or discharge a firearm he does not fall within the policy statement's restrictions precluding departure.

Application note 1 defines 'aberrant behavior" as a single criminal occurrence or single criminal transaction that A) was committed without significant planning; B) was of limited duration; C) represents a marked deviation by the defendant of an otherwise law-abiding life. There is not one shred of evidence Ron engaged in any planning, let alone significant planning, prior to committing the offense. While the accused criminal conduct was not a single occurrence, it was his first serious criminal act in which he was engaged. He is a responsible person thought well of by his few friends and employers. His conduct clearly meets the requirements of being found aberrant, and the court should reduce his sentence accordingly.

### 2. The seriousness of the offense has been mitigated by Ronald Brown's cooperation.

Ron's did enter a plea bargain in this cause and his plea clearly reflect his genuine remorse and and acceptance of responsibility. Further, Ron agrees that treatment is warranted and he is amenable to the same.

### (B) to afford adequate deterrence to criminal conduct

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three National Academy of Science panels...reached that conclusion, as has every major survey of evidence." Id.; *see also* Zvi D. Gabbay, *Exploring the Limits of the Rerstrative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countires. Id. At 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates...were not sufficient to achieve statistical significance." Id. At 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. At 1.

### (C) to protect the public from further crimes of the defendant

1.   **Ronald Brown has a low risk of recidivism**

Ronald Brown is a 57 year old, first-offender, a 2 year college attendee, was employed throughout his entire life, and has no history of drug or alcohol abuse. For all male offenders in Criminal History Category I, the recidivism rate is 15.2%. For those over 50 at the time of sentencing, however, the rate in Category I is only 6.2%. For those who are college graduates, the rate in CCH I is 7.1%. For those who have been employed, the rate is 12.7%; and for those who were ever married, the rate is 9.8%. For those with no history of illicit drug use, the recidivism rate is half those who have a drug history. For those, like Ron, who are educated, have been employed, are drug free, and over age 50, the recidivism rate is certainly much lower. *See* U.S. Sentencing Commission, *Measuring Recidivsim: The Criminal History Computation of the Federal Sentencing Guidelines,* at Exh. 9, at 28; Exh. 10, at 29 (May 2004) [hereinafter *Measuring Recidivism*]. Finally, offenders like Ron with zero criminal history points have half of the rate of recidivism half of that of offenders with one criminal history point. *See* Sentencing Commission, *Recidivism and the 'First Offender,' at 13-14* (May 2004)[hereinafter *First Offender*].

The Commission has recognized the advisability of revising the guidelines to take age and first offender status into account. *See First Offender* t 1-2 (identifying goal of "refin[ing] a workable 'first-offender' concept within the guideline criminal history structure"); *Measuring Recidivsim* at 16 (noting that "[o]ffender age is a pertinent characteristic" that would "improve [the] predictive power of the guidelines "if

incorporated into the criminal history guidelines, but has recently stated that age "may be relevant" in granting a departure. USSG 5H1.1, p.s.

In imposing the least sufficient to account for the need to protect the public from further crimes of Ron, this Court should consider the statistically low risk of recidivism presented by Ronald Brown's history and characteristics. *See e.g., United States v. Darway*, 255 Fed Appx. 68, 73 (6th Cir. 2007)(upholding a downward variance on basis of defendant's first offender status); *United States v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009)("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007)(affirming below guidelines sentence based on defendant's age, which made it unlikely that he would be again involved in a violent crime); *United States v. Urbina*, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009)(considering low risk of recidivism indicated by Defendant's lack of criminal history, positive work history, and strong family ties); *United States v. Cabrera*, 567 F. Supp. 271, 279 (D. Mass. 2008)(granting variance because defendant's "with zero criminal history points are less likely to recidivate than all other offenders"); *Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005)(basing variance in part on Defendant's age of 50 upon release because recidivism drops substantially with age); *United States v. Nellum*, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005(granting variance to 57year old defendant because recidivism drops with age); *United States v. Ward*, 814 F. Supp. 23, 24 (E.D. Va. 1993)(granting departure based on defendant's age as first time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct "before committing his first offense).

### (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Equal among factors when determining what a sentence is "sufficient but not greater than necessary" is consideration of the rehabilitative needs of a particular defendant. 18 U.S.C. 3553(A)(2)(D). In this case, addressing Mr. Brown's rehabilitative need serves other sentencing interests as well. A sentence structured around intensive supervision and counseling will also deter future misconduct and enhance public safety.

In preparing for sentencing, Mr. Brown voluntarily took a psycho-sexual evaluation with Dr. Richard Carpenter. Dr. Carpenter is an P.H.D. and Dr. Carpenter was selected for this evaluation because his assessments and recommendations are routinely used by the local courts.

Dr. Carpenters report was prepared for purposes of determining whether Mr. Brown presents a danger to the community, a danger to commit a sexual offense or future sexual offense, whether he presents a risk of recidivisim, and whether he is amenable for treatment and supervision. Dr. Carpenter concluded not Mr. Brown is not a danger to community. Further, He opined Mr. Brown is not danger to commit an offense and that Mr. Brown is a low risk of Recidivism. Dr. Carpenter believes Mr. Brown is amenable to treatment.

Dr. Carpenter also concluded that a prolonged jail sentence would be counter-productive since prison will not treat the causes of his offense. In addition, prison would eliminate any stability Ron had in life. His residence and employment.

While all parties agree some level of punishment is appropriate,

ruining his life and having him start from scratch would be neither proportional to the offense nor aid him on the path of rehabilitation. The seriousness of the crime can be demonstrated with a sentence that involves extensive supervision with extensive rehabilitation. Recall 18 U.S.C. 3582(a) which reads:

> The Court, in determining whether to impose a term of Imprisonment, and, if a term of imprisonment is to be imposed, In determining the length of the term, shall consider the factors set forth in 3553(a) to the extent that they are applicable, recognizing that *imprisonmentis not an appropriate means of promoting correction and rehabilitation.* (emphasis added).

This statement, often lost in a society hell bent on incarceration, is counter-productive to a growing opinion that removal from home, job, family, and friends, i.e, stability, leads to increased chances of recidivism and that community based supervision and programs are more effective. (See February 9, 1998, article by the Federal Bureau of Prisons "New Research Reveals Federal Inmate Drug Treatment Programs Reduce Recidivism and Future Drug Use."). Recommending a sentence of the minimum mandatory followed by supervision with extensive rehabilitation could be found consistently to be in line with the purposes and reasoning of sentencing mandated by 18 U.S.S.G. 3553.

The assessment that Mr. Brown does not pose a continuing risk to the public and of the efficacy of a sentence structured around supervision and rehabilitation is further supported by recent scientific research about internet pornography offenders. (Jerome Endgrass et al; *The Consumption of Internet Child Pornography and Violent Sex Offending*, BMC Psychiatry (July

2009)). The 2009 Endgrass study found that internet pornography offenders with no history of hands on offenses and a positive treatment prognosis are highly unlikely to pose a risk to children. One focus of the study was to ascertain whether there is a correlation between the consumption of internet pornography and violent sex offending. The conclusion of the study, consistent with all previous peer-reviewed studies, was that "the consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses in the present sample – at least in those subjects without prior convictions for hands on offenses. *Id. At 6.*

The lack of correlation between the consumption of deviant internet pornography and actual molestation is in part due to the fact computers and the internet allow people to explore or indulge in variety of behaviors that they would never pursue in real life.

Putting Ron Brown's offense in context, and acknowledging the research and other data that corroborate that CCH 1 are low risks of recidivism and that child pornography possessors do not present risk, is not to diminish the shock value or seriousness of this case. The Government will not be able to dispute the studies nor the data and place Ronald Brown in a category which suggests that Mr. Brown will re-offend or pose a danger to the community. Therefore, a significant sentence (i.e., any sentence above the guidelines range), is unwarranted and counter-productive to the treatment Mr. Brown requires. (See *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (affirming downward variance from a guideline range of 41-51 months to five years probation in

possession of child pornography case based in part on finding that the defendant did not fit the profile of a pedophile, had no history of substance abuse, no interpersonal instability, was motivated and intelligent, and had the continuing support of his family)(See *United States v. White*, 506 F.3d 635 (8th Cir. 2007)(affirming a downward variance in a distribution of child pornography case in which there was only one instance of distribution; the defendant was an older man, with a deteriorating medical condition; he had no criminal history; and a medical expert testified the defendant posed a low risk of recidivism)(See *United States v. Rowan*, 530 F.3d 379(5th Cir. 2008)(finding a probationary Sentence for possession of hard core child pornography images was sustained as Reasonable where the defendant had no criminal history and the court considered competing sentencing factors. The recommended guideline range was 46-57 months. Despite the significance of the variance, the Court of appeals deferred to the reasoning of the sentencing court))(See *United States v.Stern,* 590 F. Supp. 2d 945 (N.D. Ohio 2008). In that case, Judge Kathleen O'Malley sentenced a defendant to one year and one day imprisonment despite a guideline range that called for 46-57 months. The pornography in that case was "profoundly disturbing," id. at 952, and Judge O'Malley took pains to recognize that the defendant's crime was serious and "shocks the conscience." Id. at 951. At the same time, she recognized that child pornography "'is the least serious of the crimes on the continuum of conduct – from possession to distribution to production to predatory abuse – that exploits children.'" Id. at 952 (citation omitted). And, even more importantly, within the continuum of pure possession

offenses, some are more egregious than others. Judge O'Malley wrote that, while the pornography possessed by the defendant was disturbing, it was not "as violent as the images found on the computers of many other defendant the Court has encountered in these cases." Id. At 952.

3. **The Kinds of Sentences Available**

In Booker, the Supreme Court severed and excised 18 U.S.C. 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 125 S. Ct. at 756. This renders the sentencing guidelines advisory. Id. [Cite to 18 U.S.C. 3551, 3559, 3561, 3571, 3581 for the types of available sentences based upon defendants conviction.] The probationary disposition immediately after the minimum mandatory sought by Brown is based on his desire for treatment and low risk of recidivism.

Congress has directed the commission to "insure that guidelines reflect the General appropriateness of imposing a sentence other than imprisonment in cases In which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense," and the "general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury." 28 U.S.C. 994(j). Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of non-violent and non-serious offenders, the interests of society as a whole as well

as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub. L. No. 98-473, 239, 98 Stat. 1987, 2039 (1984)(set forth at 18 U.S.C. 3551 note). Ronald Brown is clearly not a "violent and serious offender" who "pose[s] the most dangerous threat to society." He needs medical attention from competent providers, wishes to maintain full time employment, and admitted his remorse and cooperated – by plea agreement -- with the government.

### 4. The Sentencing Range Established by the Sentencing Commission

Mr. Brown is a level 28, category criminal history I. This gives Ron a guidelines range of 78-97 months (though the charge carries a 60 month minimum mandatory). A period of five years supervised release can be imposed.

### 5. The Need To Avoid Unwarranted Disparities

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C 3553(a)(6). The court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range, *See Gall v. United States,* 552 U.S. 38, 55 (2007)("need to avoid unwanted *similarities* among other co-conspirators who were not similarly situated"); *United States v. Ovid,* 2010 WL 3940724 (E.D.N.Y 2010)(sentencing two defendants with similar guideline ranges to 60 months and 126 months respectively based on distinctions in circumstances of the offenses and characteristics of the defendants), and unwarranted differences among defendants

whose conduct and characteristics are similar. *See United States v. Parris,* 573 F. Supp. 2d 744, 753, 756-62 (E.D.N.Y. 2008).

### 1. The need to provide restitution to any victims of the offense

While the Government has determined this case does not meet the causation requirement for restitution, should the Court order some form of restitution, Mr. Brown would have the ability to pay as he has maintained full time employment his entire adult life. In determining the appropriate sentence, this Court must consider "the need to provide restitution to any victims of the offense," *See* 18 U.S.C. 3553(a)(7); *see also, e.g., United States v. Merryweather,* 447 F.3d 625, 634 (9th Cir. 2006)(acknowledging the district court's discretion to depart from the guidelines to impose a probationary sentence, since the "goal of obtaining restitution for the victims of the Defendant's offense...is better served by a non-incarcerated and employed defendant); *United States v. Peterson,* 363 F. Supp. 2d 1060, 1061-62 (E.D. Wis. 2005)(granting a variance so that the Defendant could work and pay restitution).

Should restitution be ordered, Ron Brown is college educated and can be gainfully employed. There is every reason to believe he can work and properly be treated for his psychological problems. If Mr. Brown were sentenced within the advisory guideline range, he would be nearly 64 years old. At that point, his age, health problems, life expectancy, and ability to work, would be nearly impossible for him to make any restitution. The Court should seek to maximize, rather than eliminate, Ronald Browns ability to make restitution.

## Conclusion

For the foregoing reasons, RONALD BROWN, respectfully submits that a sentence of probation is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553(a).

Respectfully submitted,

*/s/ Alex R. Stavrou*

ALEX R. STAVROU, ESQUIRE
334 South Hyde Park Avenue, Second Floor
Tampa, Florida 33606
Phone:   813-251-1289
Fax :    813-258-1810
Fl Bar No.: 0108390

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Continue was filed with the Clerk of the Court and was sent via U.S. Mail and ECM to the Assistant United States Attorney, Amanda Kaiser, Esquire, on this 12th day of July, 2013.

*/s/ Alex R. Stavrou*

Alex R. Stavrou, Esquire
Alex R. Stavrou, P.A.
334 South Hyde Park Avenue
Second Floor
Tampa, Florida 33606
Phone: (813) 251-1289
Fax:    (813) 258-1810
Florida Bar No.:  0108390
Co-Counsel for Defendant
alex@alexstavrou.com

- **All documents referenced are available online and can be provided upon request**